UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CREDIT GENERAL INSURANCE
COMPANY IN LIQUIDATION,
an Ohio Corporation,                                Case No. 1:06-cv-107

        Plaintiff,                              Hon. Richard Alan Enslen

v.

TNT DREDGING, INC., a Michigan
Corporation, *et al.*,
                                            **OPINION**

        Defendants.                /

        This matter is before the Court on Plaintiff Credit General Insurance Company's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The Motion has been fully briefed and the Court discerns no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

**I.    BACKGROUND**

        Defendant TNT Dredging, Inc. contracted with Plaintiff Credit General Insurance Company ("Credit General") for a payment and performance bond naming TNT Dredging as principal. The bond was issued, naming TNT Dredging as Principal in connection with a project known as the "Deluth/Superior Dredging Project" (Pl.'s Br. Ex. B.) TNT Dredging acted as a contractor for public projects in Michigan. As partial consideration and a precondition for the issuance of the bond, TNT Dredging, its President, Darren McCoy (individually), and its Treasurer, Cathy McCoy (individually) (collectively "TNT"), executed an Indemnity Agreement in favor of Credit General on February 23, 1998. (*See* Pl.'s Br. Ex. A.) Pursuant to this agreement, TNT agreed to:

> exonerate, hold harmless, indemnify and keep indemnified the SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including court costs, counsel fees, investigative costs,

>and from and against any and all other such losses and expenses which the SURETY may sustain or incur;
>
>(A) By reason of having executed or procured the execution of BONDS . . .

(*Id*. ¶ 3.)  The bond was issued after the execution of the Indemnity Agreement.  Thereafter, Inland Dredging, a subcontractor, alleged that TNT had failed to pay and filed a bond claim against Credit General.  Credit General then obtained a surety consulting firm and counsel to investigate the merits of the claim.

On June 30, 2000, Credit General asked TNT for collateral security in the amount of $225,000.00.  This amount was to cover anticipated expenses, losses and attorney fees.  TNT did not give Credit General any collateral.  After an investigation, on October 5, 2000, Credit General paid Inland Dredging $185,000.00 in settlement of the claim against Credit General.  Credit General also claims that it incurred 14,646.24 in costs, expenses, consulting and attorney fees as a result of the claim by Inland Dredging.  Credit General filed this action on February 13, 2006, seeking indemnification pursuant to the Indemnity Agreement.

**II.   LEGAL STANDARDS**

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file.  *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in [its] favor."  *Schaffer v. A.O.*

*Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies its burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. "The 'mere possibility' of a factual dispute is not enough,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the submission of *de minimis* evidence. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

### III. DISCUSSION

Credit General argues that because the contract language in the Indemnity Agreement is clear, summary judgment is appropriate. Credit General asserts that under the Indemnity Agreement, it had the authority to settle the claim.[1] Further, Credit General claims the Indemnity Agreement sets

---

[1]The pertinent language in the Indemnity Agreement states:

> SURETY shall have the exclusive right in its name or in the name of the CONTRACTOR to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any BOND or to take whatever other action it may deem necessary, expedient or appropriate. SURETY'S determination as to whether any such claim, counter claim, demand, suit or judgment should be

forth the remedy of reimbursement in the event that it makes a payment on behalf of TNT.[2] Therefore, Credit General argues it is entitled to indemnification from TNT pursuant to the Indemnity Agreement.

TNT does not dispute that it signed the Indemnity Agreement, nor does it contend that Credit General did not pay the monies alleged to Inland Dredging. Rather, TNT argues that Credit General's claim for indemnity is barred by the Statute of Limitations and the amount Credit General paid is in dispute.

Under Michigan law, a plaintiff must bring an action for breach of contract within six years of the date of the breach. MICH. COMP. LAWS § 600.5807(8); *see also Ins. Co. of N. Am. v. Se. Elec. Co.*, 405 Mich. 554, 556 (1979) (holding breach of contract statute of limitation applies to contracts for indemnity). TNT construes the breach as occurring at the time that Inland Dredging "asserted

---

    settled or defended shall be binding and conclusive upon the CONTRACTOR and Indemnitors.

(Pl.'s Br. Ex. A. ¶ 3.)

[2] The Indemnity Agreement states:

In the event of any payment by the SURETY, the CONTRACTOR, or between the SURETY and the Indemnitors, or either or both of them, the *SURETY shall be entitled to reimbursement for any and all disbursements made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability necessity, or expediency existed*; and that the vouchers or other evidence of any such payments made by the SURETY shall be prima facie evidence of the fact and amount of the liability to the SURETY. In addition to the payments to be made to SURETY as set forth above, CONTRACTOR and Indemnitors agree to pay to SURETY interest on all disbursements made by SURETY at the maximum rate permitted by law calculated from the date of each disbursement.

(Pl.'s Br. Ex. A ¶ 3) (emphasis added).

liability" against Credit General.  TNT cites to the language in the Indemnity Agreement which states, "Payment shall be made to the SURETY by the CONTRACTOR and Indemnitors as soon as liability exists or is asserted against the SURETY, whether or not the SURETY shall have made any payment therefor."  (Pl.'s Br. Ex. A ¶ 3.)  In a letter dated June 14, 1999, sent to both TNT and Credit General,[3] Inland Dredging stated, "[o]ur records reflect total contract earnings of 416,330.00 with previous payments of 90,000.00.  The remaining balance past due is 326,330.00.  Our many and varied conversations and attempts to collect have not been successful."  (Def.'s Resp. Ex. 1.)  TNT asserts this language is sufficient to be held as an assertion of liability and as a result, the breach occurred no later than June 28, 1999.  Therefore, if the Court were to follow TNT's logic, the statute of limitations ran on June 28, 2005, and bars this action which was brought in February 2006.

Upon review the Court finds that TNT has misconstrued the gravamen of the case.  In this action, Credit General is seeking recovery for the payment of a settlement and the losses and fees expended in connection with that settlement.  The action concerns a breach of the indemnity provision of the Indemnity Agreement.  "Michigan follows that general rule providing that a cause of action for indemnification accrues at the time judgment is paid or settlement [occurs]." *Ameron, Inc. v. Chemiche Werke Huls..Ag*, 760 F. Supp. 1234, 1236 (1991) (citing *Se. Elec.*, 405 Mich. 554).  Inland Dredging was paid a settlement on October 5, 2000, after an investigation by Credit General.  Therefore, a breach of the indemnity provision of the Indemnity Agreement occurred at the time of payment.

---

[3]TNT also cites to a very similar letter sent directly to Credit General which was received June 28, 1999, and to which Credit General responded on July 1, 1999.  (Def.'s Br. Ex. 7.)

Further, TNT's claim that liability was asserted against Credit General in correspondence from June 1999 is misleading. Upon review of the correspondence between Inland Dredging and Credit General, neither letter from June 1999 asserts liability against Credit General. Indeed, in Credit General's response to the June 14, 1999 letter, it observes that Inland Dredging and TNT were attempting to "work out a pay arrangement" and that "[Credit General] does not construe your correspondence as a formal claim against the above referenced bond." (Def.'s Resp. Ex. 2.) These sentiments are repeated in Credit General's response to the letter dated June 28, 1999. (*Id*. at Ex. 7.) Therefore, the Court finds that even in a light most favorable to TNT, the breach of contract at issue in this action is not barred by the statute of limitations.

In regards to TNT's argument that summary judgment should be denied because the settlement amount was disputed, the Court finds the argument lacking merit. Contracts which are "unambiguous are not open to construction, and must be enforced as written." *Cottrill v. Mich. Hosp. Serv.*, 359 Mich. 472, 476-77 (1960) (citation omitted); *see also Giguere v. Detroit Edison Co.*, 114 Mich. App. 452 (1982) (holding indemnity agreements should be read to give unambiguous terms full effect). Where there is no ambiguity, nor fraud or mistake, the terms of the contract must control. *Edison Sault Elec. Co. v. Manistique Pulp & Paper Co.*, 278 Mich. 592, 596 (1937) (citation omitted). In this case, the Indemnity Agreement is clear:

> SURETY shall have the *exclusive right* in its name or in the name of the CONTRACTOR to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any BOND or to take whatever other action it may deem necessary, expedient or appropriate. SURETY'S determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled or defended shall be binding and conclusive upon the CONTRACTOR and Indemnitors.

(Pl.'s Br. Ex. A ¶ 5) (emphasis added). TNT does not dispute that it signed the contract, nor does it dispute that Credit General settled a claim with Inland Dredging.[4] Moreover, the Indemnity Agreement also provides that "the vouchers or other evidence of any such payments made by the SURETY shall be prima facie evidence of the fact and amount of the liability to the SURETY." (*Id.* ¶ 3.) Credit General has provided the partial release from Inland Dredging and an affidavit evidencing the costs it incurred. TNT has failed to show otherwise. Therefore, even evaluated in a light most favorable to TNT, there is no genuine issue of material fact which remain regarding whether the amount of money paid was proper.

## IV. CONCLUSION

Therefore, the Court will grant Plaintiff's Motion for Summary Judgment. A Judgment consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>January 16, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[4] Credit General alleges that TNT lost the right to object to the payment of settlement when it failed to post collateral. Although Credit General fails to cite any authority within the contract which would give TNT the right to object if collateral was posted, the argument is inconsequential. The Indemnity Agreement is clear and unambiguous that Credit General had the *exclusive* right to settle a claim on behalf of TNT. Further, to the extent TNT appears to argue that it had the right to object, it too fails to give any authority for that right under the contract (to controvert paragraph 5 of the Indemnity Agreement) and fails to cite or argue any case law on this point.